THE ARMENTA LAW FIRM, APC
M. Cris Armenta (Cal. State Bar No. 177403)
11900 Olympic Boulevard, Suite 730
Los Angeles, California 90064
Telephone: (310) 826-2826
Facsimile: (310) 826-5456
cris@crisarmenta.com

Attorneys for Plaintiffs
Charly J. Netel, on behalf of the
Administrative Committee of the
Charly J. Netel CPA Profit Sharing Plan,
And Charly J. Netel CPA, an Accountancy
Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLY J. NETEL, on behalf of the Administrative Committee of the CHARLY J. NETEL CPA PROFIT SHARING PLAN; and CHARLY J. NETEL CPA, AN ACCOUNTANCY CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LISA NETEL, as an individual; ERIC RANS, as an individual, and MICHELMAN & ROBINSON, LLP, a partnership;; and DOES 1 through 10,<br><br>Defendants. | Case No. SACV 11-1935 FMO (RNBx)<br><br>**PLAINTIFFS' JOINT OPPOSITION TO IN LIMINE MOTIONS** |
| and related counterclaim. | |

## OPPOSITION TO MOTIONS IN LIMINE

Plaintiffs hereby submit a collective opposition to the four motions in limine filed by Defendants Eric Rans and Michelman & Robinson LLP ("Attorney Defendants").

### I. THE ATTORNEY DEFENDANTS ARE FUNCTIONAL FIDUCIARIES AND HAVE BEEN ON NOTICE OF THIS CLAIM, THUS PERMITTING THE EVIDENCE AND AN AMENDMENT AT TRIAL TO CONFORM TO PROOF

The Attorney Defendants seek to exclude any references to them being fiduciaries or "de facto" fiduciaries on the grounds that: (1) there is insufficient evidence to show that the Attorney Defendants were aware that Lisa Netel was a fiduciary; and (2) that the claim for aiding and abetting does not include a charge that the Attorney Defendants were fiduciaries. The Attorney Defendants' Motion is premised on complete distortions and misrepresentations as to the evidence that will be presented in trial.

For instance, the Attorney Defendants claim that Eric Rans had no idea until his deposition on January 31, 2013 that "the account levied upon was not in Charly's name as an individual." (Mot. at 7.) The evidence – which the court has already seen – shows the opposite. Mr. Rans testified in his deposition that he was fully aware *before he levied the ERISA funds* that the account was in the name of a "retirement" or "trust." Further, it later came out that Mr. Rans had received a report from an investigator, again *before he levied the ERISA funds* that the account was for "Charly J. Netel Retirement Trust." The claim that Eric Rans "had no idea" is outright false. Moreover, Eric Rans became counsel of record in the Netel dissolution case. In that case file, in plain view, was a declaration by Lisa Netel acknowledging she was a fiduciary and a letter written and authenticated by Lisa Netel's counsel Joel Seidel (who later then hired and associated in Eric Rans) acknowledging the account pertained to an "ERISA plan."

### A. The Attorney Defendants Conducted Themselves as Fiduciaries And Are Fiduciaries Under ERISA's "Functional" Test And Have Been On Notice of This Claim

On January 31, 2013, Eric Rans testified that his firm received the ERISA funds and that he personally directed his account department to disburse those to Lisa Netel. It became clear that the Attorney Defendants conducted themselves as "functional" fiduciaries – that is, exercised discretion and control over the Plan's assets. The Attorney Defendants' sole basis for attempting to exclude the undeniable proof that they acted as functional fiduciaries is that the claim for breach of fiduciary duty is not pleaded against them. Instead, the complaint pleads aiding and abetting against them, although it does incorporate the breach of fiduciary duty claim by reference. The Attorney Defendants' claim, without any evidence or argument, that permitting the theory that the Attorney Defendants are fiduciaries is prejudicial. However, the Attorney Defendants have not demonstrated nor even alleged any potential prejudice. Indeed, under the standards set forth in the Ninth Circuit, an amendment at trial conforming to the evidence is permissible where there is no prejudice. Here, because the Attorney Defendants themselves admit they are on notice of the unpled claim, there can be no prejudice.

A trial court may, in its discretion, ask plaintiff to amend his complaint to conform to the proof. State Life Ins. Co. v. Sullivan, 58 F.2d 741 (9th Cir. 1932)). Further, to amend a complaint to conform to proof introduced at trial, "the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue." Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986). Espinoza v. County of Fresno, 2012 U.S. Dist. LEXIS 79279 (June 7, 2012 E.D. Cal.) *10. Where the party clearly understands the unpled issue and the evidence to be used, *there is no prejudice.* See id. In this case, there is *no question* but that the Attorney Defendants are acutely aware that they are being charged as fiduciaries. Even more specifically, they even know they are being charged as "functional" or

"de facto" fiduciaries. The summary judgment motions made that point clear, as does the Attorney Defendants' own motion in limine. There could not be a more clear record that the Attorney Defendants are aware of the fiduciary duty claim. And, if sufficient proof is provided at trial, Plaintiffs have a right to move to amend the Complaint to conform the proof, because there will be absolutely no prejudice to the Attorney Defendants. Further, it is important to note that the Second Cause of Action (aiding and abetting) incorporates by references the First Cause of Action (breach of fiduciary duty), and it has been clear from the inception of this litigation that Plaintiffs seek to hold the Attorney Defendants personally liable for all losses caused to the Plan. An amendment that seeks to conform the pleadings to proof introduced at trial is proper under Rule 15(b) unless it results in prejudice to one of the parties. See Mechmetals Corp. v. Telex Computer Products, Inc., 709 F.2d 1287, 1294 (9th Cir. 1983); Consolidated Data, 708 F.2d at 396. It is not enough that an issue may be "inferentially suggested by incidental evidence in the record," Consolidated Data, 708 F.2d at 396 (quoting Cole v. Layrite Products Co., 439 F.2d 958, 961 (9th Cir. 1971)); the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue. Id. at 397.

### B. *Nieto* Is Inapplicable – The Attorney Defendants Did More Than Simply Advise a Fiduciary

The Attorney Defendants spend substantial time on the case law holding that a mere advisor to a fiduciary does not become a fiduciary. See Mot. at 8-11 (citing Harris Trust and Savings Bank v. Solomon Smith Barney, Inc., 530 U.S. 238 (2000), Nieto v. Ecker, 845 F.2d 868 (9th Cir. 1988), and Mertens v. Hewitt Associates, 508 U.S. 248 (1993).) It is an accurate statement of law that a non-fiduciary does not become a fiduciary by simply advising a fiduciary, but that "parties in interest" may be held liable. The Attorney Defendants overlook the arguments made in the Motion for Summary Judgment which are obvious. The fiduciary duty of the Attorney Defendants is premised on their own *conduct*, which far "crossed the line"

beyond mere advice to Lisa Netel. The Attorney Defendants actually took custody of the funds into their own trust account and the exercised discretion in disbursing them to Lisa Netel. It is a well-settled principle of ERISA law that a person who exercises control over plan assets is a plan fiduciary.

A party is a fiduciary "with respect to an ERISA-qualified plan to the extent he 'exercises any authority or control respecting management or disposition of its assets.'" Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton, 474 F.3d 642, 645 (9th Cir. 2007). "'*Any* control over disposition of plan money makes the person who has the control a fiduciary." IT Corp. v. General Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997) (emphasis added).[1] The question then becomes whether M&R and Rans exercised sufficient control over the Plan's assets to make them a *de facto* fiduciary. In this case, M&R and Rans accepted the Plan's monies, deposited them and then directed their accounting department to distribute the entirety of the funds to Lisa Netel. The question of law is whether those acts suffice to show control over the Plan's assets under ERISA. Under ERISA, fiduciary status is construed "liberally, consistent with ERISA's policies and objectives." Ariz. State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir. 1997). ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993). Thus, ERISA fiduciaries include not

---

[1] See also IT Corp., 107 F.3d at 1418-19 (administrator who interpreted plan, controlled money in plan's bank account, and who had authority to disallow benefits is a fiduciary); Parker v. Bain, 68 F.3d 1131, 1140 (9th Cir. 1995) (exercising discretionary authority over plan assets makes one a fiduciary whether or not the plan names one as such); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1459 (9th Cir. 1995) (corporate officer could be held liable as fiduciary on the basis of his conduct and authority even if the officer was not a named plan fiduciary).

only those specifically named in a plan document, 29 U.S.C. § 1102(a), but also any individual who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," 29 U.S.C. § 1002(21)(A)(i); see also IT Corp. v General Am. Life Ins. Co., 107 F.3d 1415 (9th Cir. 1997) ("The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary."). It is critical that ERISA's definition of fiduciary is *functional* rather than *formal*. Parker v. Bain, 68 F3d 1131 (9th Cir. 1995).

In this case, because the Attorney Defendants took actual control of the Plan's assets (whether they knew it or not), they became fiduciaries. Holding the funds, they had a responsibility to the Plan's participants. They breached that responsibility when they disbursed the entirety of the Plan's assets to their client, Lisa Netel. Further, the Attorney Defendants have been on notice of this claim – obviously, since they so admit in the Motion and in the papers concerning the Motion for Summary Judgment. The Attorney Defendants have not shown nor alleged any prejudice from having to defend this claim.

## II. THE TESTIMONY OF ALEX BRUCKER SHOuLD BE HEARD AT TRIAL

The Attorney Defendants seek to exclude the testimony of renowned ERISA expert Alex Brucker on the grounds that the decision as to whether or not the Attorney Defendants were "de facto" fiduciaries is a matter of law to be determined by the Court. The Attorney Defendants are correct that the ultimate determination of whether the Attorney Defendants conduct in exercising control over the Plan assets makes them fiduciaries is up to the Court – not the jury nor Mr. Brucker. However, given the complexity of the ERISA area and the fact that the Attorney

1  Defendants themselves have identified a competing ERISA expert to opine on the
2  same subject matter, the experts' opinions are likely to greatly inform the Court.
3  Mr. Brucker's 39-years of experience, primarily in the ERISA area, along with that
4  of competing expert Mark Hess, will likely assist the trier of fact (the court, not the
5  jury) immensely. Indeed, even the litigators in this case have unquestionably relied
6  on the expertise of ERISA experts in litigating this case. This is because the ERISA
7  area carries with it some technical complexity. In any event, the Court is certainly
8  capable of determining at trial, which testimony is helpful and which testimony too
9  far invades the province of the Court. The testimony of both experts should be
10 allowed equally.

**III.  ANY EVIDENCE AT TRIAL REFERENCING LAWRENCE BRADLEY KAPLAN SHOULD BE RULED ON DURING TRIAL**

13      The relevant of Lawrence Bradley Kaplan to the claims at issue is presently
14 unclear. The following facts are undisputed: (1) one of the entities owned by Mr.
15 Kaplan, Trojan Portable Services, paid for the execution proceedings that led to the
16 levy and taking of the ERISA funds at issue; (2) after Lisa Netel received the
17 ERISA funds, she paid more than $140,000 of them to another of Mr. Kaplan's
18 entities; (3) Mr. Kaplan has acted as Ms. Netel's agent and even attorney at times
19 (he is not licensed); (4) Mr. Kaplan is Ms. Netel's cousin, former lover, and a
20 federally convicted felon; (5) Mr. Rans wife, Michele Rans, works for Mr. Kaplan;
21 (6) Mr. Kaplan and his various entities are one of the Attorneys Defendants' biggest
22 clients.

23      Frankly, most of the facts related to Mr. Kaplan are a bit of a sideshow to the
24 issues before the Court – did Lisa Netel and the Attorney Defendants violate their
25 fiduciary duties to the Plan? However, not until the course of trial can it be fully
26 understood whether any of the facts related to Mr. Kaplan have any bearing, or if the
27 Attorney Defendants will open the door to any of them to prove a relevant issue or
28

1  fact. The defendants in this case are Lisa Netel and the Attorney Defendants.
2  Plaintiffs do not wish to distract the court or jury into the more sinister facts that
3  involve Mr. Kaplan. Plaintiffs intend to use discretion in even introducing Mr.
4  Kaplan's existence into the trial for this reason. However, Plaintiffs reserve the
5  right, should Mr. Kaplan become relevant. Issues relating to Mr. Kaplan should be
6  ruled on during trial. (It is of course interesting that this Motion was even brought,
7  given Mr. Kaplan's seemingly behind the scenes and incestuous involvement in this
8  entire matter, and that Mr. Kaplan is one of the Attorney Defendants' largest
9  clients!)

10  Dated: May 15, 2013                    THE ARMENTA LAW FIRM APC

12                                          By: _____

13                                          M. Cris Armenta

14                                          Attorneys for Plaintiffs
                                            Charly J. Netel, on behalf of the
15                                          Administrative Committee of the
                                            Charly J. Netel CPA Profit Sharing
16                                          Plan, And Charly J. Netel CPA, an
                                            Accountancy Corporation